IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| VEHICLE PROTECTION PLUS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:06-cv-241 |
| | ) | |
| PREMIER DEALER SERVICES, INC., | ) | |
| and GREAT AMERICAN INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the court on the defendants' partial motion to dismiss the complaint [doc. 6]. The plaintiff has responded [doc. 17], and the defendants have filed a reply memorandum [doc. 19]. Oral argument on the motion was heard on April 19, 2007, and the motion is ripe for the court's consideration. For the reasons discussed below, the defendants' motion will be granted in part and denied in part.

### I.  FACTUAL ALLEGATIONS

In its complaint, the plaintiff states that it sells vehicle services (extended warranty) contracts through agents to automobile dealerships nationwide. Since the plaintiff is not an insurance company, it must maintain

insurance coverage on each of the vehicle services contracts it sells. In September 2000, the plaintiff obtained the necessary policy through defendant Great American Insurance Company ("GAIC"). By the terms of the insurance policy, GAIC was obligated to pay all of the plaintiff's obligations for the vehicle services contracts if the plaintiff fails to meet those obligations. The plaintiff alleges that GAIC understood that this was a unique policy, and any cancellation of the policy would jeopardize the plaintiff's existence in the marketplace.

The insurance policy set out specific events or circumstances that would allow GAIC to cancel the policy if the policy was in effect for more than sixty days. Even if GAIC cancelled the policy, GAIC was liable for all of the plaintiff's obligations for the unexpired terms of the existing vehicle services contracts. The plaintiff alleges that none of the cancellation events or circumstances occurred, nor did GAIC ever give the plaintiff notice of any claim that would give it the right to cancel the policy.

The plaintiff contracted with other entities to administer the claims filed on the vehicle services contracts. In May 2000, the plaintiff contracted with Warrantech Automotive, Inc. to be a third party administrator of its vehicle services contracts. This was not an exclusive contract for either party. In fact, the plaintiff alleges that Warrantech had other business dealings with GAIC and came to owe GAIC a great deal of money. GAIC told the plaintiff about its concern that GAIC and Warrantech would end up in litigation over the disputes

between them and suggested that the plaintiff find another third party administrator for its vehicle services contracts.  GAIC encouraged the plaintiff to contract with defendant Premier Dealer Services, Inc. ("PDS") for its future vehicle services contracts.  The plaintiff knew that GAIC had a substantial ownership interest in PDS.

The plaintiff and PDS entered into a contractual relationship, effective December 1, 2004, whereby PDS was to be a third party administrator for the plaintiff's vehicle services contracts.  The plaintiff avers that it undertook all the necessary steps to begin its new relationship with PDS.  Nevertheless, GAIC requested that the plaintiff delay implementing the contract because of GAIC's relationship with Warrantech.  GAIC told the plaintiff that allowing PDS to take over the claims administration would "seriously impair" GAIC's ability to collect monies owed to it by Warrantech.  The plaintiff delayed its transfer of vehicle services contracts to PDS and continued using Warrantech.  Over eight months later, a meeting was arranged to discuss proceeding with PDS, at which time the plaintiff learned that all the computer information sent to PDS had been deleted and would have to be reproduced before PDS could take over as claims administrator.

In November 2005, the plaintiff believed that PDS was ready to begin administering its claims, but PDS announced it would not be accepting any business from the plaintiff because GAIC would not allow it to proceed.  The

plaintiff alleges that it was against the economic interest of PDS for GAIC to prohibit PDS to proceed with the contract it had entered into with the plaintiff.

The plaintiff then arranged a conference call with representatives from PDS and GAIC. During the call, GAIC affirmed that it was prohibiting PDS from administering vehicle services contracts for the plaintiff, including the plaintiff's customers who had never had vehicle services contracts administered by Warrantech and customers who refused to do business with Warrantech.

Soon thereafter, the plaintiff learned that GAIC was cancelling its policy with the plaintiff, effective December 31, 2005, evidently because GAIC was severing its relationship with Warrantech. This was confirmed in a second conference call. No valid ground for cancelling the policy was ever given, nor did GAIC ever send the plaintiff written notice of the cancellation. The plaintiff alleges that GAIC knew this position would likely force the plaintiff out of business.

The plaintiff asked Warrantech if it would agree to allow PDS to administer its vehicle service contracts. Warrantech refused. The plaintiff asked GAIC to continue insuring its contracts for several more months so the plaintiff could find another insurer. GAIC refused unless Warrantech agreed in writing and the plaintiff agreed to new terms. Specifically, GAIC would continue to insure the plaintiff's vehicle service contracts for four more months, but PDS would only be allowed to administer service vehicle contracts for those customers who

4

refused to do business with Warrantech, for each of which the plaintiff would pay Warrantech $10 in addition to the fees to PDS for the contracts. The plaintiff believed that it had no recourse but to sign the new Memorandum of Understanding prepared by GAIC so that it could stay in business long enough to find another insurer. The plaintiff alleges that PDS did not perform its part of the new agreement, demanded more money, and refused or failed to remit monies due the plaintiff.

The plaintiff claims seven causes of action under statutory and common law, and seeks damages for its loss of income, expenses, and other damages. In their motion to dismiss, the defendants argue that the plaintiff has failed to state a claim on all the causes of action except breach of contract.

## II. LEGAL DISCUSSION

### A. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of claims based on the plaintiff's "failure to state a claim upon which relief can be granted." When considering such a motion, the court

> must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. . . . When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. . . . Hence, a judge may not grant a Rule

>  12(b)(6) motion based on a disbelief of a complaint's
>  factual allegations.

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

### B. Causes of Action

#### 1. Inducement of Breach of Contract

Apparently conceding that the plaintiff has sufficiently pled the elements of tortious inducement of a breach of contract, the defendants argue instead that there can be no inducement of breach of contract where there is a unity of interest between the interfering and breaching parties. The Tennessee Supreme Court has stated:

> We hold that a parent corporation has a privilege
> pursuant to which it can cause a wholly-owned
> subsidiary to breach a contract without becoming liable
> for tortiously interfering with a contractual relationship.
> This privilege, however, is not absolute and may be lost
> if the parent company acts contrary to the subsidiary's
> economic interests or if the parent corporation employs
> wrongful means in such situations.

*Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 780 (Tenn. 2000).

In its complaint, the plaintiff admits that GAIC "had an ownership interest in PDS." The plaintiff claims that GAIC "maliciously induced and procured the breach, refusal or failure" of PDS to perform the contract it entered into with the plaintiff in violation of section 47-50-109 of the Tennessee Code Annotated. The plaintiff further alleges that it was "against the economic interest

6

of PDS" for GAIC to prohibit PDS from performing the contract. Specifically, the plaintiff avers that PDS was in the business of administering vehicle service contracts, that PDS and the plaintiff had entered into an agreement wherein PDS would administer such contracts for a profit, and but for GAIC's interference, PDS would have earned profits from the agreement with the plaintiff. Further, the plaintiff contends that the interference by GAIC exposed PDS to liability for breach of the agreement.

The court finds that these facts, if true and proven by the plaintiff, would require a conclusion that GAIC and PDS are not entitled to the "unity-of-interest" privilege. *See Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 638-39 (M.D. Tenn. 2006). The defendants' motion to dismiss this claim is denied.

### 2. *Intentional Interference with Business Relationship*

The defendants argue that the plaintiff has not stated a claim for this tort because the plaintiff has failed to adequately plead improper means or motive. The Tennessee Supreme Court has expressly recognized this tort of intentional interference with business relationships, stating:

> [L]iability should be imposed on the interfering party provided that the plaintiff can demonstrate the following: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3)

>    the defendant's intent to cause the breach or termination
>    of the business relationship; (4) the defendant's
>    *improper motive or improper means*; and finally, (5)
>    damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citations and footnotes omitted). The Court recognized that the term "improper" was not easily defined and must depend on the facts and circumstances of the case. *Id.* at 701 n.5. Nevertheless, the court stated that in order to demonstrate a defendant's improper *motive,* the plaintiff must show, at least, that the defendant's "predominate purpose was to injure the plaintiff." *Id.* The Court then listed some examples of improper *means*: "violations of statutes, regulations, or recognized common-law rules, violence, threats or intimidation, bribery, unfounded litigation, fraud misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship . . . ." *Id.* The defendants argue in this case that the plaintiff has not "state[d] or even insinuate[d]" that GAIC's motive or means were improper.

In response, the plaintiff points out that after GAIC induced the plaintiff to enter into a new agreement with PDS to administer the plaintiff's vehicle service contracts, GAIC evidently determined that it would earn more if Warrantech was allowed to administer the plaintiff's contracts. The plaintiff alleges that GAIC and Warrantech even had a side agreement to share any

proceeds set aside for the payment of claims after the vehicle service contracts expired. When the plaintiff learned that GAIC would not allow PDS to perform its obligations under the agreement and that GAIC was going to cancel the plaintiff's insurance, the plaintiff was left with the prospect of going out of business. GAIC finally agreed to continue for four months to allow the plaintiff an opportunity to find another insurer, but with conditions that were not in the plaintiff's best interests. For example, GAIC would only allow PDS to administer certain vehicle protection contracts – those that Warrantech could not administer – and only if the plaintiff agreed to pay an additional fee to Warrantech in addition to the fee it would pay to PDS.

The court finds that the plaintiff has sufficiently pleaded that GAIC forced the plaintiff to accept its terms or go out of business. This allegation is adequate to demonstrate that the defendant GAIC used improper means to interfere with the agreement that the plaintiff had with PDS. The defendants also argue that the "unity of interest" privilege applies to this tort. For the reasons discussed above, the court finds that the plaintiff has pleaded sufficient facts to overcome the "unity of interest" privilege. The defendants' motion to dismiss this cause of action is denied.

*3. Economic Duress*

The defendant first argues that it is questionable whether Tennessee courts recognize the tort of economic duress. To the contrary, however,

Tennessee recognized the cause of action as early as 1922 when the Tennessee Supreme Court stated:

> where goods or other property is in possession of one not the owner, who refused to deliver such property to the owner unless the latter pays him a sum not rightfully due, and the owner in order to obtain possession of his property pays the unlawful exaction, a payment so made is in a legal sense under duress, and may be recovered back in a proper action.

*Johnson v. Ford*, 245 S.W. 531, 539 (Tenn. 1922). Later, the Tennessee Court of Appeals defined the cause of action as the "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another . . . ." *Crocker v. Schneider*, 683 S.W.2d 335, 338 (Tenn. Ct. App. 1984); *see also Bridgeport Apartments P'ship v. Ellerbe*, No. E2003-01298-COA-R3-CV, 2004 WL 221310 (Tenn. Ct. App. Feb. 2, 2004). Based on these authorities and others, the court finds that the Tennessee courts recognize a cause of action for economic duress or business compulsion.

The defendants next argue that even if there is such a cause of action, the plaintiff has not pleaded sufficient facts to allow the claim to go forward. They contend that the plaintiff has not identified a wrongful threat, that the plaintiff had other options, and that the plaintiff was an experienced business entity. In *Ellerbe*, the court of appeals cited with approval the description of duress found at 25 Am. Jur. 2d *Duress and Undue Influence* § 7. The court would seem to require that there be a wrongful threat, that there be financial

distress caused by the wrongful threat, and that there be no reasonable alternative to the wrongdoer's terms. *See Ellerbe* at *2. If the compulsion is merely because of financial circumstances and the party is an experienced business person, there is no duress. *Id.* If the demand is lawful and depends on something which a party has a legal right to do, there is no duress. *Id.*

The plaintiff contends that GAIC's unlawful threat to cancel the insurance policy and its unlawful interference with the agreement between the plaintiff and PDS put the plaintiff's business in jeopardy. Then, before GAIC would continue to insure the plaintiff for four more months or allow PDS to administer the vehicle service contracts that Warrantech could not service, GAIC insisted that the plaintiff pay Warrantech $10.00 per contract. The plaintiff alleges that GAIC had no lawful right to make such a demand.

The court finds that the plaintiff's allegations concerning this cause of action are sufficient to survive a motion to dismiss for failure to state a claim. The defendants' motion to dismiss this cause of action is denied.

### 4. Deceit

The defendant argues that the plaintiff has not sufficiently pleaded a cause of action for deceit. A claim for deceit, or misrepresentation as it is more commonly known, may be based on an allegation that the defendant made an intentional or negligent misrepresentation of material fact or that the defendant intentionally or negligently failed to disclose a material fact. *See, e.g.*, *Saltire*

*Indus., Inc. v. Waller, Lansden, Dortch & Davis*, 491 F.3d 522, 526-27 (6th Cir. 2007); *Justice v. Anderson County*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997). In this case the plaintiff's allegations pertain to the defendants' failure to disclose material facts. "Nondisclosure of a material fact may also give rise to a claim for fraudulent [intentional] or negligent misrepresentation when the defendant has a duty to disclose and the matters not disclosed are material." *Justice*, 955 S.W.2d at 616. An action for fraudulent or intentional misrepresentation must be stated with particularity. *See* Fed. R. Civ. P. 9(b); *Saltire*, 491 F.3d at 526.

The defendant argues that the plaintiff has failed to plead fraud with particularity. In response, the plaintiff contends that it has set out in some detail the nondisclosure by GAIC of its intent to breach the contract. The plaintiff alleges that GAIC, with whom the plaintiff had a long-standing contractual relationship, did not reveal its intent to breach the contract in the teleconference in November 2005; that this information was critical to the plaintiff's ability to stay in business; that GAIC only admitted its intent when confronted by the plaintiff a few weeks before the cancellation was to take place; and that GAIC's refusal to continue insuring the plaintiff's vehicle service contracts would and did cause the plaintiff substantial financial harm. Further, the plaintiff also relies on GAIC's failure to inform the plaintiff that it would not allow PDS to perform its agreement, which jeopardized the plaintiff's business.

The court finds that these allegations are sufficient to meet the pleading requirements of a claim for misrepresentation. The defendant's motion to dismiss the deceit or misrepresentation claim is denied.

### 5. Tennessee Consumer Protection Act

The defendant argues that the plaintiff's claim brought pursuant to the Tennessee Consumer Protection Act ("TCPA") should be dismissed for the same reasons as the deceit claim; that is, it has not been pleaded with particularity. In Tennessee, causes of action under the TCPA are held to same pleading standards as fraud claims. *See Harvey v. Ford Motor Credit Co.* 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999).

In its complaint, the plaintiff alleges that the GAIC's acts and practices were unfair and deceptive. For the reasons the court finds that the plaintiff's deceit claim is sufficiently pleaded, the court also finds that the plaintiff's TCPA claim is adequately pleaded. The defendant's motion to dismiss this claim is denied.

### 6. Civil Conspiracy

The defendants argue that they are entitled to judgment as a matter of law on the plaintiff's civil conspiracy claim because the plaintiff has not pleaded an underlying predicate tort or alleged any wrongful activity to support the claim. A civil conspiracy is "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful

by unlawful means. Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (citation omitted); *see also Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004). Further, there is no liability for civil conspiracy unless there is underlying wrongful conduct. *See Levy*, 159 S.W.3d at 82. And, if the underlying wrongful conduct claim fails, the civil conspiracy claim also fails. *Id.*

The plaintiff alleges that GAIC and Warrantech have conspired to change the policies and procedures previously adopted by the parties in order to increase the "loss reserves" for GAIC. These actions would make it more difficult for customers to have their claims processed and would affect the plaintiff's future relationships with customers. The plaintiff claims that the underlying wrongful action was an intentional interference with the plaintiff's business relationships.

Considering the elements of this tort as set out above, the court finds that the plaintiff's allegations fail to state a claim for civil conspiracy. The plaintiff's claims of interference with future business relationships are entirely speculative. The plaintiff supposes that the allegedly substandard service being provided by GAIC and Warrantech would cause an unidentifiable customer base to purchase vehicle service contracts elsewhere. Absent an identifiable class of third parties that would change their vehicle service contract provider resulting in damages to the plaintiff, the plaintiff has failed to state a claim for interference

14

with business relationships. The failure of this claim results in a failure to state a claim for civil conspiracy. The defendants' motion to dismiss this claim is granted.

### III. CONCLUSION

For these reasons, the court finds that the plaintiff has failed to state a claim for civil conspiracy, and the defendants' motion to dismiss this claim is granted. The defendants' motion to dismiss all the other claims is be denied. An order reflecting this opinion will be entered.

ENTER:

*s/ Leon Jordan*
United States District Judge